(No. 29687.—

THE PEOPLE *ex rel.* Clay Lawless, County Collector, *vs.* THE CITY OF QUINCY, Appellee.—(COMMUNITY HIGH SCHOOL DISTRICT No. 40 *et al.*, Appellants.)

*Opinion filed November 20, 1946.*

GUNN, C.J., and MURPHY, J., specially concurring.

WAGNER & DIETRICH, of Quincy, for appellants.

LAWRENCE E. EMMONS, JR., Corporation Counsel, and RICHARD W. S. NEU, both of Quincy, for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

Community High School District No. 40, Prairie School District No. 144, and the Town of Gilmer, all in Adams county, have appealed from the judgment of the county court of Adams county sustaining the objection of the city of Quincy to the collector's application for judgment

and order of sale for delinquent taxes for the year 1944. The city paid the taxes under protest and filed objections asking a refund of the total amount of the taxes paid on the theory that the property assessed was not subject to taxation.

The facts are stipulated, and, insofar as material, are as follows: Prior to April 1, 1944, the city of Quincy, acting under the authority of article 24 of the Cities and Villages Act, acquired by condemnation title to 957.13 acres of land in Gilmer township, to be used as a municipal airport. The land in question is located approximately ten miles from Quincy. It was paid for with money obtained from the sale of bonds. The bonds were issued pursuant to authority given by the voters of the city at a special election called and held for that purpose. The regularity of the condemnation proceedings and the validity of the bonds are not questioned. The city ultimately expects to receive revenue from the operation of the airport, but it is impossible to predict at this time whether such operation will result in a profit or a loss. Since the acquisition of the land by the city, it has not been farmed. The only income received was approximately $300 from the sale by the city of certain random crops harvested in 1944. At the time of the hearing, runways and buildings were being constructed on the property under the sponsorship and direction of, and with funds provided through, the Civil Aeronautics Administration. The contract between the city and the Civil Aeronautics Administration obligates the city to operate the land as an airport for the sole use and benefit of the public, and the city has agreed not to permit the land to be used for any other purpose.

The sole question here involved is whether the land comprising the airport is, under the statute, exempt from taxation by the three taxing bodies who are appellants here.

Section 3 of article IX of the constitution provides that the property of municipal corporations "may be ex-

empted from taxation; but such exemption shall be only by general law." This section does not of itself exempt any property from taxation. It merely gives authority to the legislature to grant such exemption within the limitations prescribed. (*People ex rel. Gill. v. Trustees,* 364 Ill. 131.) This constitutional provision, and the statutes implementing it, are to be strictly construed. Unless the property clearly falls within the class which may be exempted, it is subject to taxation. *People ex rel. Gill* v. *Trustees,* 364 Ill. 131; *St. John Evangelical Lutheran Congregation* v. *Board of Appeals,* 357 Ill. 69; *People ex rel. Davis* v. *City of Chicago,* 124 Ill. 636.

Section 19 of the Revenue Act of 1939, (Ill. Rev. Stat. 1945, chap. 120, par. 500,) insofar as material here, is as follows:

"All property described in this section to the extent herein limited, shall be exempt from taxation, that is to say: * * *

"(6) * * * all property owned by any city or village outside of the corporate limits of the same if used exclusively for municipal purposes. * * *

"(9) All market houses, public squares and other public grounds owned by a municipal corporation and used exclusively for public purposes."

The statute under which the city of Quincy acquired the airport here in question (Ill. Rev. Stat. 1945, chap. 24, par. 24-4) provides that "All land and appurtenances thereto, acquired, owned, leased or occupied by a municipality for any purpose specified in section 24-1 are acquired, owned, leased and occupied for a public purpose."

Appellants' contention is, that if the airport is exempt from taxation at all, it must be by virtue of paragraph (6) of section 19; that the airport, although admittedly used for public purposes, is not used "exclusively for municipal purposes" within the meaning of that paragraph; that, therefore, the airport must be taxable. Appellee replies

that the airport is used exclusively for municipal purposes, and is, therefore, exempt from taxation under said paragraph of section 19. Appellants and appellee both ignore paragraph (9) of said section, which, as we view it, is applicable to and decisive of this case.

Paragraph (9) of section 19, was originally enacted as a part of section 2 of the Revenue Act of 1872. As originally enacted, the ninth paragraph of that section exempted "all market houses, public squares or other public grounds used exclusively for public purposes." (Ill. Rev. Stat. 1874, chap. 120, par. 2.) This provision has since been amended only by inserting therein the words "owned by a municipal corporation." With the addition of those words, the provision is now the same as when it was originally enacted in 1872. This phrase was first incorporated in paragraph (9) in 1939. (Laws of 1939, p. 1007.) Inasmuch as the airport here in question is admittedly owned by the city of Quincy, that amendment does not affect the applicability of earlier cases construing the language of the statute to the case at bar. It is also to be noted that there is no limitation on the location of the property exempted by said paragraph (9). It makes no difference whether the property is located within or outside the limits of a municipal corporation. Paragraph (9) contains no such limitation as to the location of the property, as is found in paragraph (6) of said section.

Section 2 (now 19), as originally enacted, contained no provision exempting from taxation property owned by a municipality located outside of its corporate limits and which is used for "municipal purposes." The only exemption was that contained in paragraph (9), applicable to property "used exclusively for public purposes." Not until 1919 was a provision written in that section of the statute exempting property owned by a municipality and located outside the corporate limits if such property was used for "municipal purposes." So that under said section as it

existed up until 1919, the only provision exempting from taxation property located outside a municipality was paragraph (9.) This paragraph applied to all property owned by a municipality wherever located if it was used for "public purposes." Prior to the 1919 amendment to paragraph (6), no property located outside a municipality, with certain specific exceptions not here necessary to notice, was exempt from taxation unless it was "used exclusively for public purposes." Then by the 1919 amendment (Laws of 1919, p. 770,) the legislature broadened the exemptions contained in said section by inserting in the sixth paragraph of section 2 the words "all property owned by any city or village outside of the corporate limits of same, used exclusively for municipal purposes." Substantially the same language is contained in all subsequent amendments of said paragraph.

From the date of the original enactment of section 19 (then section 2) in 1872, down to the present time, paragraph (9) has exempted from taxation all property belonging to a city or village "used exclusively for public purposes," wherever located. Then, by the amendment of 1919, the legislature broadened the exemptions by the amendment to the sixth paragraph so as to include in the property exempted under said section, all property owned by a city or village located outside its corporate limits, if such property is "used exclusively for municipal purposes." The effect of the 1919 amendment to the sixth paragraph was not to change or modify the language of the ninth paragraph but only to expand the language of the sixth paragraph so as to include property not theretofore included in the exemptions created by the statute.

If the property here involved is comprehended within the language contained in paragraph (9), it will be unnecessary to discuss the difference between the meaning of the terms "municipal purposes," as used in paragraph (6), and "public purposes," as used in paragraph (9). If

the property is being used for "public purposes" under paragraph (9), then the question whether its present use is for "municipal purposes" under paragraph (6) is wholly immaterial.

Paragraph (9) was first considered by this court in the case of *In the Matter of Swigert,* 123 Ill. 267, where it was held, without discussion, that a bridge over the Rock River, owned by the city of Moline, was not exempted from taxation by the statute. However, in the case of *Sanitary District* v. *Martin,* 173 Ill. 243, a full discussion was had as to what constituted public grounds "used exclusively for public purposes," within the meaning of this paragraph. The property there in question was the drainage channel of the Sanitary District of Chicago, located outside of the district, and used to carry off the sewage of the district in order to prevent the contamination of Lake Michigan. The property had been taxed in Will county for State, county, city, town and village general taxes. This court, in discussing generally what are "public grounds," said: "It is contended that the words 'public grounds' must be interpreted according to the general rule that general words following the specific enumeration of objects or things will be held to include only such objects or things as are of the same kind as those specifically enumerated. Market houses and public squares are the only objects enumerated. It has been said that a public market is a designated place in a town or city to which all persons can repair who wish to buy or sell articles there exposed for sale, (*Caldwell* v. *City of Alton,* 33 Ill. 416,) and that a public square is intended for beauty and adornment and for the health and recreation of the public. (*City of Jacksonville* v. *Jacksonville Railway Co.* 67 Ill. 540.) Both public markets and public squares are for the use of the public,—of all persons who, in the pursuit of business or pleasure, may have occasion to resort thereto, subject, of course, to whatever municipal regulations may be in

force regulating the use of the same. They are in this respect similar in their use to streets and alleys. The 'public grounds' exempt from taxation referred to in this paragraph would, therefore, under this rule of construction be construed to be grounds which are open for the designated use to the public generally, and this view would seem to be emphasized by the qualifying clause, 'used exclusively for public purposes.' "

The court then discussed the right of the public generally to use the channel and found that the public outside of the district had no right to use the drain or channel for sewage, and that the only beneficial use of the public generally in that part of the channel lying outside of the district was an easement of passage over the water for the purposes of navigation. The court, therefore, concluded that the channels outside the district were not "public grounds" in the sense that those words were used by the legislature in paragraph (9) of section 2 of the Revenue Act of 1872.

In *Sanitary District* v. *Hanberg*, 226 Ill. 480, the court considered the case of the drainage channels which were located within the district. After discussing the holding in *Sanitary District* v. *Martin*, 173 Ill. 243, the court said: "It cannot be denied that the drainage to be provided by the drainage district and the disposition of the sewage of the district is a public purpose of the highest character, involving the health and welfare of the inhabitants of the district, and that the general public within the district are entitled to the use of the channel therein and the benefits derived from it. The channel was made and is being maintained by taxation of the inhabitants of the district, which could only be done for a public purpose, and undoubtedly they may compel the performance of the powers conferred upon the trustees to provide for the drainage of the district by constructing and maintaining channels, drains and outlets for sewage. We do not regard it as

essential that the public use should embrace the people of the whole State, but, on the contrary, many uses are exclusively public in their nature and involve no private right or interest, which are limited in area or in the persons benefited by the use. It does not seem that a purpose would cease to be public on the mere ground that the benefits are confined to the inhabitants of a particular municipality. The use of the lands in question is public in the same sense as the use of market houses and public squares, and we think that the lands within the district included within the channel and right of way and devoted exclusively to the purpose of drainage and carrying off of the sewage of the district are exempt from taxation."

The court then differentiated between the property belonging to the sanitary district which was devoted to its own use, and that portion which was leased to individuals. It was there said: "The district has leased part of its lands to private individuals, and such lands, not being used for public purposes, are subject to taxation. In some cases lands were assessed and taxed, parts of which were so leased while the other parts were exempt. It is therefore contended that the whole tax was void. Where legal and illegal taxes are blended so as to be incapable of separation the entire levy will be avoided. But we do not regard that rule as applicable to this case. The exemption does not extend to all property of the municipal corporation, but it is a qualified exemption of such portions of the property as are used exclusively for public purposes. The exemption is to be construed strictly against the right claimed, and where the sanitary district owns a single tract of land which has been assessed as a whole and leases a part of it, it is not unreasonable that the district should make known to the assessing officers what portion is used exclusively for the public purpose. The district may use its property either for public or private purposes, and it would not be reasonable to require assessing officers to

examine its leases for the purpose of determining exactly what portion is exempt from taxation. Moreover, it does not appear from the record that there may not be an apportionment of the tax as between the part of the tract leased to individuals and the part used for public purposes."

The reasoning of the foregoing cases has been approved in subsequent cases involving other property of the Sanitary District of Chicago. *Sanitary District* v. *Gifford,* 257 Ill. 424; *Sanitary District* v. *Young,* 285 Ill. 351; *Sanitary District* v. *Gibbons,* 293 Ill. 519; *Sanitary District* v. *Rhodes,* 386 Ill. 269.

Several other cases interpreting paragraph (9) of section 19 are worthy of mention. In *In re Petition of City of Robinson,* 281 Ill. 429, it was held that the occasional unauthorized use of a public park by private persons to conduct automobile races, for which they charged admission, did not deprive the park of its immunity from taxation. In *Sanitary District* v. *Carr,* 304 Ill. 120, it was held that if property is primarily devoted to public use, it may be exempt from taxation, although it is used incidentally for minor or occasional private purposes which do not interfere with the primary public use, but that if the primary use is not public, an incidental or secondary use for a public purpose will not bring the property within the exemption. *People ex rel. Carr* v. *Sanitary District,* 307 Ill. 24, restated the holding in *Sanitary District* v. *Carr,* and further held that there could be a separate assessment for taxes made on the separate uses, where there was a clear division of the property between the portion used for public purposes and the portion devoted to private use. In *People ex rel. Scott* v. *Ricketts,* 248 Ill. 428, it was held that a park dedicated for the benefit of other property and restricted to the use of the owners of such property or residents thereon, was not devoted to a public use and was not exempt from taxation. The court there said: "It is not essential to a public use that its benefits should be re-

ceived by the whole public or even a large part of it. The benefit may be limited actually to the inhabitants of a small locality, but the use must be in common and upon the same terms, however few the number who avail themselves of it. 'A public use, whether for all men or a class, is one not confined to privileged persons. The smallest street is public, for all have an equal right to travel on it, but a way used by thousands which may be shut against a stranger is private.' (*Burd Orphan Asylum* v. *School District,* 90 Pa. 21.) The use of land for a public park is a public use, and the right to such use may be acquired by the exercise of the power of eminent domain. In such case every individual has the same right to the use of the park, of which he cannot be deprived. In the dedication of land for a park the dedication may restrict the use either as to its character or as to the persons who may use it. A park dedicated for the benefit of other property and restricted to the use of the owners of such property or residents therein is not dedicated for a public use, but remains private property and is not exempt from taxation."

From the foregoing cases the following rules may be deduced as to what constitutes a use for public purposes, within the meaning of paragraph (9) of section 19 of the Revenue Act of 1939: First, if the property is located within the limits of the municipal corporation, and is devoted to the use of the public as represented by the residents of that area, it is being used for public purposes; Second, if the property is located outside the limits of the municipal corporation, it can only be considered as being used for public purposes when it is open on equal terms to use by the public generally, rather than being limited in its use to the inhabitants of the municipal corporation which owns the property.

Although the record in this case does not give a comprehensive picture of the exact method of operation to be employed by the city of Quincy in connection with the

municipal airport, the same having been acquired under the authority of article 24 of the Cities and Villages Act, it must be assumed that the facilities will be open to the public generally, and not limited to the use of the citizens of Quincy. Otherwise, the airport could hardly serve as the air entrance to the city of Quincy, which is the primary purpose of its existence. We held in *People ex rel. Curren* v. *Wood*, 391 Ill. 237, that there is no essential difference, so far as the public interest is concerned, between the operation of a public airport and that of a public highway or public park, and that the purposes and functions of the airport authority in that case were public rather than private. The same observations must be made as to the purposes and functions of the city of Quincy in maintaining its municipal airport. Under the conclusions reached in that case, the airport property here involved is used exclusively for public purposes. This conclusion is fortified by the fact that the legislature, in the enabling act under which the airport was acquired, provided that "All land and appurtenances thereto, acquired, owned, leased or occupied by a municipality for any purpose specified in section 24-1, are acquired, owned, leased and occupied for a public purpose." (Ill. Rev. Stat. 1945, chap. 24, par. 24-4.) The fact that it is anticipated that the city will charge a fee or rental for the use of the airport facilities, as authorized by the statute, (Ill. Rev. Stat. 1945, chap. 24, par. 24-6,) does not make that use private. It is not essential to public use that it be absolutely free to everyone. *People ex rel. Curren* v. *Wood*, 391 Ill. 237; *Carstens* v. *City of Wood River*, 344 Ill. 319.

For the reasons indicated, we conclude that the Quincy Municipal Airport is property used exclusively for public purposes and is exempt from taxation under paragraph (9) of section 19 of the Revenue Act of 1939. (Ill. Rev. Stat. 1945, chap. 120, par. 500(9).) It is public grounds, owned by a municipal corporation and used exclusively for public

purposes. This conclusion makes it unnecessary to consider the question of whether it might be exempt as property used exclusively for municipal purposes under paragraph (6) of said section. Ill. Rev. Stat. 1945, chap. 120, par. 500(6).

The judgment of the county court of Adams county is affirmed.

*Judgment affirmed.*

GUNN, C.J., and MURPHY, J., specially concurring:

We agree with the result reached in this case, but not with the grounds upon which it is based. We think the exemption of the property from taxation under paragraph (6) of section 19 was proper. We do not think that paragraph (9) of the same section applies.

In *In the Matter of Swigart,* 123 Ill. 267, and *Roodhouse Water Corp.* v. *Board of Review,* 303 Ill. 465, we held that the property described in paragraph (9) should be of the same general nature as that set out in the statute, namely, market places and public square. It will be noted that both of these are of a different character from ground for an airport and likewise both are within the city. It is sufficient to say that under paragraph (6) the property used for an airport is used for a municipal purpose under the Cities and Villages Act, sections 24-1 to 24-10, inclusive, and is also for a public purpose by virtue of what is said in section 24-4 providing that the acquiring of ground for an airport is acquiring it for a public purpose. Since the general statutes provide that it is a municipal as well as a public purpose, we do not think the distinction between governmental and proprietary functions has any application to the case.