(No. 44115.–

CHILDRENS DEVELOPMENT CENTER INC. *et al.*, Appellees, v. WALTER A. OLSON, Township Assessor *et al.*, Appellants.

*Opinion filed October 2, 1972.*

DAVIS, J., dissenting.

PHILIP G. REINHARD, of Rockford (WILLIAM H. GATES, of counsel), for appellants.

KEEGAN & GOSDICK, of Rockford (ROBERT W. GOSDICK, of counsel), for appellees.

MR. JUSTICE RYAN delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Winnebago County permanently restraining the collection of taxes assessed against real estate owned by the School Sisters of St. Francis (Sisters), a religious corporation, and leased to the Childrens Development Center (Center), a not-for-profit corporation.

For several years Sisters had owned and maintained a convent in Rockford. Prior to 1969 the convent had not been assessed for real estate taxes. In August of that year Sisters entered into a lease whereby a part of the convent was leased to Center for a period of one year and the lease was subsequently renewed. Sisters is composed of a group of Roman Catholic nuns whose primary function is to teach in the parochial school system in Illinois. Center is a not-for-profit corporation which provides programs for educationally handicapped children. It has out-patient treatment, physical therapy, speech therapy, occupational and family therapy, and serves 200 to 250 children. The income of Center is derived from the State of Illinois Department of Mental Health, the United Fund and from

tuition and fees for outpatient services. Few of the people who use the services are able to pay for the cost thereof. No person is refused service because of the inability to pay and no person derives any profit from the organization. The original lease involved 3,800 square feet at a rental of $9,070 for one year. The new lease involves 5,904 square feet at an annual rental of $14,051. The total area of the convent covers 67,500 square feet plus the chapel and the garage area. Following the execution of the lease an attempt was made to assess for taxation purposes that portion of the convent leased to Center.

Section 3 of article IX of the constitution of 1870 provides:

> "The property of the State, counties and other municipal corporations, both real and personal, and such other property as may be used exclusively for agricultural and horticultural societies, for school, religious, cemetery and charitable purposes, may be exempt from taxation; but such exemption shall be only by general law."

Section 6 of article IX of the constitution of 1970 provides:

> "The General Assembly by law may exempt from taxation only the property of the State, units of local government and school districts and property used exclusively for agricultural and horticultural societies, and for school, religious, cemetery and charitable purposes. ***"

Section 19.2 of the Revenue Act of 1939 (Ill.Rev. Stat. 1969, ch. 120, par. 500.2) exempts from taxation: "All property used exclusively for religious purposes, or used exclusively for school and religious purposes, or for orphanages *and not leased or otherwise used with a view to profit* ***." (Emphasis added.) Section 19.7 (par. 500.7) exempts from taxation: "All property of institutions of public charity, all property of beneficent and charitable organizations *** when such property is actually and exclusively used for such charitable or beneficent purposes, and not leased or otherwise used with a view to profit ***."

It is not questioned that the activities conducted by

Center are charitable and that if the property were owned by Center and these activities conducted thereon, it would be tax exempt. Also if Sisters were to conduct a similar operation on the property instead of Center, it appears that the property would be tax exempt. It is defendants' contention that the leasing of the property for a return by Sisters to Center destroyed the tax-exempt status of that portion of the convent covered by the lease. Plaintiffs contend that it is not the mere leasing of the property that destroys a tax-exempt status but that the leasing must be done "with a view to profit." It is their position that the lease in this situation did not provide a profit to Sisters.

Defendants, relying on *City of Mattoon v. Graham, 386 Ill. 180, The Oak Park Club v. Lindheimer, 369 Ill. 462, Turnverein "Lincoln" v. Board of Appeals, 358 Ill. 135,* and *People ex rel. Baldwin v. Withers Home, 312 Ill. 136,* contend that if property is let for a return, it is used for profit and so far as its liability to the burden of taxation is concerned, it is immaterial whether the owner actually makes a profit or sustains a loss.

Plaintiffs relying on *People ex rel. Goodman v. University of Illinois Foundation, 388 Ill. 363,* and *People ex rel. Hesterman v. North Central College, 336 Ill. 263,* contend that the property must be leased "with a view to profit" and that the "mere fact that a part of the enterprise yields an income—incidental profit—is but of little importance." 388 Ill. at 374.

The positions of both parties are sustained by the authorities cited. The apparent conflict in the two positions, however, is reconciled when consideration is given to the primary use to which the leased property was devoted in the cases cited. In *Graham, Turnverein* and *Withers Home* the leased property was used primarily for the production of income—profit. Whereas, in *University of Illinois Foundation* and *North Central College* the primary use of the leased property, while yielding incidental income, was to serve a function connected with the

tax-exempt purpose of the institution. We need go no further than the drawing of this distinction for the decision of this case. It is unnecessary through accounting procedures to ascertain whether Sisters actually made a profit from the leasing. That is not the test. This court has often held that it is the primary use of the property and not the ownership that determines its taxable status. *Illinois Institute of Technology v. Skinner, 49 Ill.2d 59; International College of Surgeons v. Brenza, 8 Ill.2d 141; People ex rel. Graff v. Passavant Memorial Hospital, 342 Ill. 193.*

We likewise consider that it is the primary use to which the property is devoted after the leasing which determines whether the tax-exempt status continues. If the primary use is for the production of income, that is, "with a view to profit," the tax-exempt status is destroyed. Conversely, if the primary use is not for the production of income but to serve a tax-exempt purpose the tax-exempt status of the property continues though the use may involve an incidental production of income. Following the leasing the primary use to which the property was devoted was serving the tax-exempt charitable purpose of Center. This did not destroy the tax-exempt status of the leased property although the letting produced a return to Sisters.

The defendants point out that the status of real property for tax purposes is fixed as of January 1 of the year for which taxes are assessed. Since the lease from the Sisters to Center was not executed until August, 1969, defendants insist that Sisters has not proved the tax-exempt status of the property for 1969. Though the record does not extensively cover this issue, the evidence does show that as of January 1, 1969, the portion of the property in question was occupied by Rock Valley College under a lease with Sisters. The use of this property for school purposes supports the trial court's determination that it had a tax-exempt status for 1969. Ill.Rev.Stat. 1967, ch. 120, par. 500.1; *Illinois Institute of Technology v. Skinner, 49 Ill.2d 59.*

Accordingly, we consider that the injunctive relief granted by the circuit court of Winnebago County was proper.

*Judgment affirmed.*

MR. JUSTICE DAVIS, dissenting:

I cannot agree with the opinion of the majority of the court in this case. To continue the tax-exempt status of property owned by religious corporations even though the use of that property is no longer that to which the property was originally dedicated, and for which it was granted its tax-exempt status, can be justified only if the statutory language granting such exemption clearly encompasses the new use of the property. In the case at bar, it does not. The majority has extended tax-exempt status to property owned, but not used by a religious corporation. This is not justified by the controlling constitutional and statutory provisions.

The problem is largely one of statutory construction. Section 3 of article IX of the constitution of 1870 provides that property used for school, religious, cemetery and charitable purposes may be exempted from taxation, but only by general law. Section 19.2 of the Revenue Act of 1939 (Ill.Rev.Stat. 1969, ch. 120, par. 500.2) exempts from taxation "All property used exclusively for religious purposes, or used exclusively for school and religious purposes, or for orphanages *and not leased or otherwise used with a view to profit \*\*\**" (emphasis added). It is the latter clause which defines the issue in this case, and which demands a more precise interpretation than that given to it by the majority.

Tax exemption statutes must be strictly construed and all doubts resolved against an exemption. *People ex rel. Marsters v. Rev. Saletyni Missionaries, Inc. (1951), 409 Ill. 370, 375; People ex rel. Lloyd v. University of Illinois (1934), 357 Ill. 369, 376.* The majority opinion recognizes that doubt exists as to whether the property owned by the Sisters is entitled to an exemption by conceding that the

contentions of the litigants, both for and against exemption, are sustained by prior decisions of this court.

The words of section 19.2—"with a view to profit" —have been interpreted by this court as modifying the words "leased" and "used", so that property of a religious corporation used exclusively for religious purposes is exempt from taxation under the statute unless such property is leased by such corporation or otherwise used with a view to profit. *People ex rel. Hesterman v. North Central College (1929), 336 Ill. 263.*

The cases cited by the plaintiff Center—*People ex rel. Goodman v. University of Illinois Foundation (1944), 388 Ill. 363,* and *People ex rel. Hesterman v. North Central College, (1929), 336 Ill. 263—*can be distinquished factually. Both the University of Illinois and North Central College continued to conduct their schools, for valid and tax-exempt educational purposes, while the leases involved where in effect. Here, however, the Sisters had terminated the religious use of their building prior to, and during the life of the lease to the Center, and its nonreligious use of the property did not entitle the Sisters to a tax-exempt status, as did the continued educational use in the case of the university and college. The majority observes this factor, yet fails to draw therefrom the necessary conclusion which it imparts. Since the lease does not serve the tax-exempt purpose of the institution, that purpose having terminated, the lease, necessarily, is one for profit.

Under the pertinent constitutional, and statutory provisions, there is a material difference between the actual and exclusive use of property for a religious purpose and the application to the same purpose of the income derived from tenants who occupy the property, and this court has held that it is immaterial whether the owner actually makes a profit or sustains a loss by virtue of the letting. *Turnverein "Lincoln" v. Board of Appeals (1934), 358 Ill. 135, 144.* Under this view, it is evident that the property lost its tax-exempt status when the exclusive

religious use of the property ceased and the Sisters leased it for a profit, since they realized a substantial income therefrom and, additionally, would not be required to pay taxes, or meet other maintenance expenses in connection therewith.

The majority notes that it is the primary use of the land which determines the tax-exempt status of the property. I agree with this proposition, but the majority has added to it a new and unwarranted dimension, *i.e.,* that the primary use is that to which the property is put *after leasing.* Clearly, this is a secondary use. The lease itself establishes the use by the Center as secondary. The primary use of the property by the Sisters was religious; under the lease the property ceased to be used for this purpose and it was rented to the Center for profit. Under such use, the Sisters no longer should enjoy a tax-exempt status. The majority's decision, in effect, has exempted from taxation funds earned by a religious corporation from property let for the production of income. This violates the provisions of section 19.2 of the Revenue Act of 1939.

I would deny the tax exemption.