NUTRASWEET COMPANY, Plaintiff-Appellee, v. AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, as Trustee, *et al.*, Defendants-Appellants.

First District (1st Division)   No. 1—91—3885

Opinion filed February 7, 1994.—Rehearing denied May 27, 1994.

Foran & Schultz, of Chicago (Jeff D. Harris and Daniel D. Kasten, of counsel), for appellants.

Sidley & Austin, of Chicago (Robert A. Downing and Gerard D. Kelly, of counsel), for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

This appeal arises as a result of a dispute between plaintiff, the NutraSweet Company (NutraSweet), and defendants, American National Bank and Trust Company of Chicago, as trustee under trust agreement dated August 1, 1984, and known as trust No. 61840 (American National Bank); F.E. Trotter, Inc.; W.H. McVay, Inc.; P.R. Cassiday, Inc.; H.C. Cornuelle, Inc.; First Federal Savings and Loan Association of America; and Stein & Company Management, Inc. (Stein), concerning the scope of plaintiff's obligation to make payments in addition to annual base rent during the first 12 months of a lease entered into between NutraSweet and American National Bank. On November 15, 1991, the trial court entered an order: (1) granting judgment in favor of plaintiff on count I of plaintiff's first amended complaint; and (2) dismissing plaintiff's reformation claim (count II) as moot. Defendants now appeal the trial court's order. For the following reasons, we affirm the judgment of the trial court.

The record reveals the following facts. On February 3, 1987,

American National Bank and NutraSweet entered into a lease for office space (Lease) in a newly constructed building located at 1751 Lake-Cook Road, Deerfield, Illinois. The Lease provided for a term of 15 years, commencing October 1, 1987, and ending on September 30, 2002.

Section 1 of the Lease establishes an annual base rent. Section 2 of the Lease establishes an "Additional Rent" which NutraSweet is required to pay in addition to the base rent. Section 2 (c) of the lease defines the parameters of the additional rent as follows:

"(c) Payments of Tax and Expense Adjustment; Projections.

Tenant shall pay Tax and Expenses Adjustment to Landlord in the manner hereinafter provided.

(i) Tenant shall make payments on account of the Tax and Expense Adjustment (any such payment with respect to any Adjustment Year being also called 'Additional Rent Progress Payment') effective as of the Adjustment Date for each Adjustment Year as follows:

(A) Landlord may, prior to each Adjustment Date or from time to time during the Adjustment Year in which such Adjustment Date falls (but not more often than semi-annually), deliver to Tenant a written notice or notices ('Projection Notice') setting forth (1) Landlord's best good faith estimates, forecasts or projections (collectively, the 'Projections') of Taxes and Expenses for such Adjustment Year based on Landlord's budgets of Expenses and estimate of Taxes, and (2) Tenant's Additional Rent Progress Payment for such Adjustment Year based upon the Projections. Landlord's budgets of Expenses and the Projections based thereon may be revised by Landlord from time to time (but subject to the above semi-annual restriction) based on changes in rates and other criteria which are components of budget items. *For the first twelve (12) calendar months of the Term, the Additional Rent Progress Payment shall not exceed the product of Five Dollars ($5.00) times the Rentable Area of the Premises.*" (Emphasis added.)

The record indicates that pursuant to provision 2(c)(i)(A), during the first 12 months of the term, October 1, 1987, through September 1988, NutraSweet paid defendants, in addition to base rent, $50,597.08 per month for the first nine months, this amount being the product of "Five Dollars per square foot times the square footage of the Rentable Area of the Leased Premises, prorated on a monthly basis," for calendar year 1988. For the last three months of 1988, NutraSweet paid $92,002.63 per month in additional rent progress

payments. The record shows that NutraSweet's monthly additional rent progress payments for the first nine months of 1988 totalled $455,373.72, and for the last three months such payments totalled $276,007.89, for a total payment of additional rent in 1988 of $731,381.01.

By letter dated September 20, 1989, defendant Stein, the manager of the leased premises, notified NutraSweet of a "reconciliation of actual versus estimated operating expenses and real estate taxes for the year 1988." Stein's letter stated that the reconciliation was pursuant to section 2(d)(i) of the Lease. Section 2(d) provides in relevant part as follows:

"(d) Tax and Expense Readjustments

The following readjustments with regard to the Tax and Expense Adjustment shall be made by Landlord and Tenant:

(i) Following the end of each Adjustment Year and after Landlord shall have determined the amounts of Taxes and Expenses to be used in calculating the Tax and Expense Adjustment for such Adjustment Year, Landlord shall notify Tenant in writing ('Landlord's Statement') of such Taxes and Expenses for such Adjustment Year. If the Tax and Expense Adjustment owed for such Adjustment Year exceeds the additional rent progress payment paid by Tenant during such Adjustment Year, then Tenant shall, within forty-five (45) days after the receipt of Landlord's Statement (which shall be delivered as soon as practical under the circumstances but in any event no later than one hundred twenty (120) days after the end of such Adjustment Year), pay to Landlord an amount equal to the excess of the Tax and Expense Adjustment over the Additional Rent Progress Payment paid by Tenant during such Adjustment Year. If the Additional Rent Progress Payment paid by Tenant during such Adjustment Year exceeds the Tax and Expense Adjustment owed for such Adjustment Year, then Landlord shall credit such excess to Rent payable after the date of Landlord's Statement or, at Tenant's option, shall make a cash payment to Tenant in the amount of such excess, which payment shall be made within forty-five (45) days following notice from Tenant. If this lease shall expire prior to full application of such excess, Landlord shall pay to Tenant the balance thereof not theretofore applied against Rent and not reasonably required for payment of Additional Rent for the Adjustment Year in which the lease expires."

Stein's letter stated that defendants' total actual operating expenses for 1988 were $890,422 and that the 1988 assessed real estate taxes

totalled $812,839.67. Thus, Stein advised NutraSweet that its 1989 rental billing would reflect an additional $333,951.67 due the landlord, representing NutraSweet's share of operating expenses, $1,056,423.82, less $731,381.61 already paid by NutraSweet, and with a credit due to NutraSweet for $90.54. NutraSweet responded to Stein's letter by filing its complaint in the instant action.

In count I of its first amended complaint,[1] NutraSweet sought a declaratory judgment that the Lease does not require it to pay any "Additional Rent" associated with the taxes and expenses provision, section 2(b)(i), for the first 12 months of the term, other than the amounts which NutraSweet had already paid. NutraSweet argued that the Lease states that for the first 12 calendar months of the term, October 1, 1987, through September 30, 1988, the "Additional Rent" is not to exceed the product of $5 times the square footage of the rentable area of the leased premises, prorated on a monthly basis for that calendar year. NutraSweet also sought a declaratory judgment that it was entitled to a $9,742.49 rent credit based upon the disparity between additional rent progress payments made in October, November and December 1988, and NutraSweet's prorated share of actual taxes and expenses attributable to those months. In count II, NutraSweet sought, in the alternative, a reformation of the Lease based upon an alleged mutual mistake as to the actual intent and agreement of the parties.

Defendants filed an answer, followed by a motion for judgment on the pleadings pursuant to section 2—615(e) of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615(e)), dismissing count I.[2] Defendants argued that the payments NutraSweet made for the first 12 months of the term, over and above the base rent, were only a deposit on account, pending the determination of the actual taxes and expenses NutraSweet is obligated to pay under the Lease. Defendants asserted that the clear and unambiguous language of the Lease superseded NutraSweet's allegations regarding the intent of the parties.

On June 28, 1990, the trial court held a hearing on defendant's motion for judgment on the pleadings. At that time, the court found

---

[1]NutraSweet filed its original complaint on December 18, 1989, and defendants filed an answer and motion for judgment on the pleadings on March 8, 1990. Subsequently, NutraSweet was granted leave to file an amended complaint, and did so on May 21, 1990.

[2]Defendants initially filed their section 2—615 motion with respect to NutraSweet's original complaint. After NutraSweet filed its amended complaint, defendants duplicated their earlier motion, and both parties filed supplemental briefs.

that defendants' contention that the last sentence of section 2(c)(i)(A) put a $5 cap on additional rent progress payments, but did not affect NutraSweet's ultimate liability for additional rent, effectively "renders the cap provision senseless." The court denied defendants' motion, finding that the "Five Dollar" language put a cap on the amount of "Additional Rent" NutraSweet was required to pay in the first 12 months of occupancy. The matter was eventually set for trial on November 12, 1991.

On November 12, 1991, at the outset of trial, defendants presented a motion for summary judgment on count I of NutraSweet's amended complaint. Defense counsel explained to the court that the motion for summary judgment presented the same argument as that denied by the court in defendants' prior motion for judgment on the pleadings, and requested that the court reconsider its ruling of June 28, 1991. NutraSweet's counsel argued that the issue was rendered moot by the trial court's denial of defendants' prior motion. The trial court nevertheless agreed to hear the arguments of the parties. The record shows that the parties made the identical arguments as those made on June 28, 1990.

Following arguments, the trial court denied defendants' motion for summary judgment. The court stated that it considered defendants' motion for summary judgment as a motion to reconsider defendants' prior motion for judgment on the pleadings, and found in favor of NutraSweet. The court stated:

"[T]he language in dispute, 'For the first twelve calendar months of the term, the additional rent progress payments shall not exceed the product of five-dollars ($5.00) times the rentable area of the premises,' puts a cap on the additional rent progress payments, and for the first year of the NutraSweet Company's occupancy and rental of the premises, the so-called additional rent payments cannot, under any circumstances, exceed five-dollars a square foot."

The trial court entered an order on November 15, 1991, reflecting its findings, and in addition declaring that, pursuant to the Lease, NutraSweet was entitled to a credit for calendar year 1988 of $9,742.49 to be applied against its rental obligations, based upon the additional rent progress payments made by NutraSweet for the months of October, November, and December 1988. The trial court found no reason to delay the enforcement or appeal of the order. Defendants' timely appeal followed.

On appeal, defendants contend that the trial court erred in granting NutraSweet's request for declaratory relief in count I of its amended complaint. Defendants argue that the last sentence of

section 2(c)(i)(A) of the Lease represents a $5 limit only on the amount NutraSweet must pay *in advance* toward its additional rent, but that once actual taxes and expenses are determined, NutraSweet is obligated to pay any adjusted amount. Defendants contend that to reach this interpretation, section 2(c)(i)(A) must be read in conjunction with provisions appearing later in the Lease, in particular section 2(d), which provides in relevant part:

> "If the Tax and Expense Adjustment owed for such Adjustment Year exceeds the Additional Rent Progress Payment paid by Tenant during such Adjustment Year, then Tenant shall *** pay to Landlord an amount equal to the excess of the Tax and Expense Adjustment over the Additional Rent Progress Payment paid by Tenant during such Adjustment Year."

Defendants argue that the above-quoted provision clearly states that the tenant must pay an amount over the additional rent progress payment for an adjustment year, if tax and expenses exceed such an amount. Defendants argue that the first adjustment year of the Lease began on the first day of the Lease. Defendants contend that the trial court failed to distinguish between the terms "Additional Rent" and "Additional Rent Progress Payment" as used in the Lease, thereby resulting in an erroneous interpretation of the Lease. In the alternative, defendants argue that the Lease is, at a minimum, ambiguous as to the additional rent payments.

NutraSweet responds that there is no adjustment date within the first 12 months of the Lease. NutraSweet argues that if the Lease provided for an adjustment date within the first 12 months of the Lease, NutraSweet would have been required to pay an additional amount in October 1988, pursuant to section 2(d)(1) of the Lease, which provides that the Landlord must deliver a statement of additional rent owed pursuant to the tax and expense adjustment for an adjustment year "no later than one hundred twenty (120) days after the end of such Adjustment Year." NutraSweet argues that the record shows that no demand was made by Stein until September 1989, more than 120 days after the end of the 1988 calendar year.

●1 The interpretation of a lease is a question of law, to be determined by the reviewing court independent of the trial court's judgment. (*Harris Trust & Savings Bank v. La Salle National Bank* (1990), 208 Ill. App. 3d 447, 453, 567 N.E.2d 408.) The rules for construing a lease are the same as those for construing a contract. (*Design Studio International, Inc. v. Chicago Title & Trust Co.* (1989), 185 Ill. App. 3d 797, 541 N.E.2d 1166.) Where the language used in a lease is definite and precise, the instrument speaks for itself and there is no need for interpretation. (*Design Studio*, 185 Ill. App. 3d at

802.) However, where a contract is susceptible to one of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred. (*Tishman Midwest Management Corporation v. Wayne Jarvis, Ltd.* (1986), 146 Ill. App. 3d 684, 691, 500 N.E.2d 431.) Where there is any doubt or uncertainty as to the meaning of the language used in a lease it should be construed most strongly against the lessor and in favor of the lessee. *Chicago Housing Authority v. Rose* (1990), 203 Ill. App. 3d 208, 216, 560 N.E.2d 1131.

■ In the present case, both parties suggest that the language, "For the first twelve (12) calendar months of the Term, the Additional Rent Progress Payment shall not exceed the product of Five Dollars ($5.00) times the Rentable Area of the Premises," created an ambiguity as to the actual intention of the additional rent clause of the Lease at issue. After reviewing the Lease, we conclude that this language of the defendants must be construed against them, as they are the drafters of the Lease, as well as the lessors of the property. Thus, we find that the meaning of the language of section 2(c)(i)(A) of the Lease was to ensure that NutraSweet paid no more than $5 times the rentable area for the first 12 months of its lease.

For the above reason, we affirm the judgment of the trial court.

Affirmed.

O'CONNOR and MANNING, JJ., concur.