SIXTH DIVISION

APRIL 10, 1998

                                                                     

No. 1-96-2195

NORTHWEST SUBURBAN FELLOWSHIP, INC., ) APPEAL FROM THE

a Not-for-Profit Corporation, ) CIRCUIT COURT

) OF COOK COUNTY.

Plaintiff-Appellant, )

)

v. )

)

THE DEPARTMENT OF REVENUE, )

State of Illinois, ) HONORABLE

) ALEXANDER P. WHITE,

Defendant-Appellant. ) JUDGE PRESID­ING.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff Northwest Suburban Fellowship, Inc. (Northwest) appeals an order of the circuit court of Cook County affirming a decision of defendant Department of Revenue (Department) denying Northwest a real estate tax exemption.

The record on appeal indicates the following facts.  North­west is a not-for-profit corporation existing under Illinois law.  Northwest's sole purpose is to maintain space, facilities and supplies for meetings of Alcoholics Anonymous and its family service groups, such as Alanon and Alateen.

On September 24, 1979, Northwest entered into a five year lease with the Village of Palatine (Village) for space on the second floor of the Palatine Community Center, located in Pala­tine, Illinois.  The 1979 lease gave Northwest the option to extend the lease for two additional five year periods, beginning in 1984 and 1989.  On November 9, 1984, the circuit court of Cook County enjoined the Cook County Collector from instituting any action to enforce collection of taxes or interest charges against Northwest for the years 1979-83.  The order finds in part that the Department had denied North­west's complaint for tax exemption on the ground that Northwest did not own the property.  The permanent injunction was based on North­west's status as a tax-exempt charitable institution.

The record contains documents indicating that the Cook County Collector continued to assess property tax with regard to Northwest for the years 1984-91.  Northwest opted to extend the lease from December 1, 1989, through November 30, 1994.  A rider to the 1989 lease provided that:

"Any real estate taxes payable with re­spect to the premises or the leasehold or other interest therein for any portion of the lease term shall be paid by Lessee.  Any such tax shall be paid when due and prior to any penalty date, and Lessee shall submit to Lessor a re­ceipted bill for any such tax promptly after such tax has been paid."

The original lease did not contain this provision. 

On May 4, 1992, Northwest filed a complaint and application for a real estate exemption with the Cook County Board of Appeals (Board).  Northwest's application noted that there was a prior tax exemption application and attached the prior court order finding that the property was entitled to an exemption.  On July 10, 1992, the Board forwarded the complaint and application to the Department without recommendation.  The Department re­ceived the complaint and application on July 24, 1992.

On August 20, 1992, the Department denied the application for exemption on the ground that the property was not in exempt use.  On August 31, 1992, the Department received a letter and petition from Northwest seeking a formal hearing on the matter.  On September 13, 1993, the Department held a hearing.

On October 26, 1993, an Administrative Law Judge (ALJ) for the Department issued a recommended decision that the parcel in question did not qualify for exemption during 1991.  The ALJ ruled that property leased by a Village is not exempt where the terms of the lease require the lessee to pay real estate taxes.  On December 6, 1993, the Director of the Department approved the recommended decision as a hearing disposition.  Both the recom­mended decision and a hearing disposition refer to the parcel at issue as a lease­hold parcel.  However, the recommended decision states that the value of the fee interest of the area leased to Northwest, including the proportionate value of the land and building, should be assessed to the Village and that it was improper to assign a leasehold parcel number to the leased area and assess it as a leasehold.
(footnote: 1)
On January 7, 1994, Northwest filed a complaint for adminis­trative review in the circuit court of Cook County.  On May 15, 1996, the trial court affirmed the decision of the Department.  The trial court concluded that the parcel qualified for an exemp­tion under the "charitable purposes" provision of the Illinois Property Tax Code (Code).  See 35 ILCS 200/15-65 (West 1996).  Nevertheless, the trial court held that the parcel was  taxable under the Code because the Village had included a provi­sion in the rider to the lease requiring Northwest to pay real estate taxes.  See 35 ILCS 200/15-60(c) (West 1996).  Northwest filed a timely notice of appeal.  The parties have submitted supplemental memoranda comment­ing on the recommended decision of the ALJ, pursuant to an order of this court.

The question on appeal is whether the Department erred in denying a property tax exemption in this case.  Statutes exempt­ing property from taxation are to be strictly construed in favor of taxation; the taxpayer must prove that he or she is entitled to the exemption.  
Harrisburg-Raleigh Airport Authority v. Department of Revenue
, 126 Ill. 2d 326, 331, 533 N.E.2d 1072, 1074 (1989).  Each claim for exemption must be determined from the facts presented.  
Chicago Patrolmen's Association v. Depart­ment of Revenue
, 171 Ill. 2d 263, 270-71, 664 N.E.2d 52, 56 (1996).  In cases involving the Department's interpretation of a tax statute, the Department's interpretation is relevant, but not binding on a reviewing court.  
Branson v. Department of Revenue
, 168 Ill. 2d 247, 254, 659 N.E.2d 961, 965 (1995).  Where the facts are undisputed, a determination of whether property is exempt from taxation is a question of law.  
Harrisburg-Raleigh Airport Authority
, 126 Ill. 2d at 331, 533 N.E.2d at 1074.

The tax exemption statute at issue in this case is section 15-60 of the Code, which provides in part as follows:

"All property belonging to any county or munici­pality used exclusively for the mainte­nance of the poor is exempt, as is all prop­er­ty owned by a taxing dis­trict that is being held for future expansion or devel­opment, ex­cept if leased by the taxing district to less­ees for use for other than public purpos­es.

Also exempt are:

* * *

(b) all public buildings belonging to any county, township, or municipality, with the ground on which the buildings are erected;

(c) all property owned by any municipal­ity located within its incorporated limits.  Any such property leased by a municipality shall remain exempt, and the leasehold inter­est of the lessee shall be assessed under Section 9-195 of this Act,
(footnote: 2) (i) for a lease en­tered into on or after January 1, 1994, unless the lease expressly provides that this exemp­tion shall not apply; (ii) for a lease entered into on or after the effective date of Public Act 87-1280
(footnote: 3) and before Janu­ary 1, 1994, un­less the lease expressly provides that this exemption shall not apply or unless evidence other than the lease itself substan­tiates the intent of the parties to the lease that this exemption shall not apply; and (iii) for a lease entered into before the effective date of Public Act 87-1280, if the terms of the lease do not bind the lessee to pay the taxes on the leased prop­erty or if, notwith­standing the terms of the lease, the municipality has filed or hereafter files a timely exemption petition or complaint with respect to property consisting of or in­clud­ing the leased property for an assessment year which includes part or all of the first 12 months of the lease period.  The foregoing clause (iii) added by Public Act 87-1280 shall not operate to exempt property for any assess­ment year as to which no timely exemp­tion peti­tion or complaint has been filed by the munici­pality or as to which an adminis­trative or court decision denying exemption has become final and nonappealable.  For each assessment year or portion thereof that prop­erty is made exempt by operation of the fore­going clause (iii), whether such year or portion is before or after the effective date of Public Act 87-1280, the leasehold interest of the lessee shall, if necessary, be consid­ered omitted property for purposes of this Act;

* * *

For purposes of this Section, "munici­pal­ity" means a municipality, as defined in Sec­tion 1-1-2 of the Illinois Municipal Code."  Pub. Act 90--176, eff. January 1, 1998 (amend­ing 35 ILCS 200/15-60 (West 1996)). 

Both the Department and the circuit court denied tax-exempt status on the ground that the terms of the lease bound Northwest to pay the taxes on the leased property.  Indeed, the circuit court ruled that the property at issue in this case fell within the scope of section 15-60(b), but was not exempt because of the language in the lease.
(footnote: 4)  Thus, we first consider whether the terms of the lease bound North­west to pay the taxes on the leased property and to waive any other claim to a tax exemption.   

The interpretation of a lease is a question of law to be determined by the reviewing court.  
NutraSweet Co. v. American National Bank and Trust Co. of Chicago
, 262 Ill. App. 3d 688, 694, 635 N.E.2d 440, 444 (1994).  The primary function of the court in construing a lease is to give effect to the intention of the parties as expressed in the document.  
Midland Management Co. v. Helgason
, 158 Ill. 2d 98, 104, 630 N.E.2d 836, 839 (1994).  Where the language used is definite and precise, the lease speaks for itself and there is no need for interpretation.  
NutraSweet Co.
, 262 Ill. App. 3d at 694, 635 N.E.2d at 444.  However, in contrast to the interpretation of a tax statute, where there is any doubt  as to the meaning of a lease, it should be construed most strongly against the lessor and in favor of the lessee.  
NutraSweet Co.
, 262 Ill. App. 3d at 695, 635 N.E.2d at 445.

The rider to the lease obligates Northwest to pay "real estate taxes payable."  The term "payable" means "[c]apable of being paid; suitable to be paid; admitting or demanding payment; justly due; [or] legally enforceable."  Black's Law Dictionary at 1016 (5th ed. 1979).  It would be absurd to conclude that North­west must pay taxes that are not legally due.

Northwest claims that no taxes are payable, arguing that the execution of the lease did not destroy all of the tax exemptions Northwest could legally assert.  Conversely, taxes may be legally due if the lease operates as a waiver of all claims to tax exemp­tion.  The Department did not assert this argument in its brief, but raised it during oral argument.  Indeed, the Depart­ment's brief addresses each of Northwest's claims to various exemptions.  Never­theless, we shall consider the Department's argument here.

A waiver is an intentional relinquishment of a known right.  
Bolingbrook Equity I Ltd. Partnership v. Zayre of Illinois, Inc.
, 252 Ill. App. 3d 753, 766, 624 N.E.2d 1287, 1295 (1993).  For example, an annexation agreement in which a tax-exempt religious organization agreed that it was "the intention of the Owner that all of the Subject Realty, and all improvements thereon, shall become as fully taxable as privately owned real estate within the State of Illinois" was held to waive a claim to tax-exemption.  See 
Clark v. Marian Park, Inc.
, 80 Ill. App. 3d 1010, 1012-14, 400 N.E.2d 661, 663-65 (1980).  Given the record in this case, we conclude that the language of the lease rider here is more ambiguous than the language at issue in 
Clark
.  Indeed, as noted above, requiring a lessee to pay "taxes payable" does not mean that taxes are automatically payable.

In sum, the lease rider in this case is ambiguous.  It must be construed strongly in favor of the lessee Northwest and against the lessor Village of Palatine.  Thus, we conclude that this lease did not operate as an intentional waiver of all claims to tax exemption.

It is useful to examine this point not only in terms of the law of waiver, but in terms of general tax law.  All property, including that of municipal corporations, is subject to taxation unless specifically exempted.  
Marshall County Airport Board v. Department of Revenue
, 163 Ill. App. 3d 874, 875, 516 N.E.2d 318, 319 (1987).  It is well settled that it is the duty of the land­owner to pay all taxes and special assessments; in order for a lessor to shift the obligation to pay taxes from itself to the lessee, the lease must express this shift in clear, concise terms.  
601 West 81st Street Corp. v. City of Chicago
, 129 Ill. App. 3d 410, 415, 472 N.E.2d 827, 831 (1984).

This court has already concluded that the lease here does not clearly shift tax liability, given the circumstances of this case.  The general rules of Illinois tax law demonstrate that the execution of a lease that binds the lessee to pay taxes does not create a tax.  Rather, such a lease shifts a liability the municipality would be obligated to pay, but for exemptions such as those listed in section 15-60.   As property tax exemptions are statutory creations, we next turn to consider whether North­west may claim a property tax exemp­tion under the relevant statute.

The Department argues that the property is taxable because Northwest's application for tax exemption was untimely.  The Depart­ment relies on the part of section 15-50(c)(iii) that provides that leased municipal property may be exempt where:

"
notwithstanding the terms of the lease
, the municipal­ity has filed or hereafter files a timely exemption petition or complaint with respect to property consist­ing of or includ­ing the leased property for an assess­ment year which includes part or all of the first 12 months of the lease period."  35 ILCS 200/15-60(c)(iii) (West 1996)(emphasis add­ed).

We note that even where the lessee agrees to pay taxes on the leased property, the statute contemplates that the property may be held exempt by the Department or the judiciary.  Moreover, the question of a timely petition is determinative only if a failure to satisfy subsection (c) results in a denial of all claims to a tax exemption.  Had the legislature intended that the execution of a particular lease or the untimely filing of an application regarding property under such a lease would destroy all claims to a tax exemption, it could have easily done so with express language or by placing the condition in a separate section or subsection of the Code.

The plain language and structure of section 15-60 as a whole also undermine the premise that subsection (c) is determinative.  The first portion of section 15-60 sets forth two types of property as exempt from taxation.  One of these exemptions is destroyed if the property is leased for use other than public purposes.  It follows that property leased for public purposes remains exempt from taxation.

The statute then states in five subsections types of proper­ty which are "[a]lso exempt."  The word "also" ordinarily means "[b]esides; in addition; likewise; too[;] *** [a]nd in addition."  American Heritage Dictionary at 97 (2d College Ed. 1982).  The exemptions listed in section 15-60 are extended to various entities -- municipalities, counties, townships, taxing districts -- owning various types of property.  This language and structure indicates that the exemptions listed in section 15-60 are mutual­ly exclusive.

Indeed, parts of a subsection of the predecessor to section 15-60 have been construed as separate.  In 
City of Chicago v. Illinois Department of Revenue
, 147 Ill. 2d 484, 590 N.E.2d 478 (1992), the City held title to buildings on property subleased from private commercial entities.  The issue on review was whether the buildings and the land were exempt from property taxes under the predecessor to section 15-60(b), which exempted "all public buildings belonging to any *** city ***, with the ground on which such buildings are erected."  See Ill. Rev. Stat. 1987, ch. 120, par. 500.6.

The supreme court held that the buildings were exempt and that the land was taxable.  The court rejected the Department's argument that the statute required both the building and the ground be owned by the City, stating that "given [the] express statement that public buildings belonging to a city be exempt from taxation, the legisla­ture could not have intended that this exemption turn on the mere fortuity that underlying land also be in exempt ownership."  
City of Chicago
, 147 Ill. 2d at 495, 590 N.E.2d at 483.  It follows from the supreme court's separate treatment of two parts of one subsection of the exemption statute at issue here that separate subsections of this statute should also be treated separately.

In sum, the language and structure of section 15-60 are such that whether the property at issue qualifies for the exemption set forth in subsection (c) is not determinative of this appeal.  Accordingly, this court turns to consider whether the property is otherwise exempt.

Northwest claims that the property falls within the exemp­tion for property owned by a taxing district that is being held for future expansion or development.  The Department argues that the property is taxable because it was leased to Northwest for use for other than public purposes.  The Department's brief, citing 
People ex rel. Lloyd v. University of Illinois
, 328 Ill. 377, 159 N.E. 811 (1928), states that Northwest's use of the prop­erty "is not a public function, as [Northwest] does not per­form a function that the Village of Palatine performs."  
Lloyd
 involved an exemption for educational or religious use of proper­ty.  Neither 
Lloyd
 nor section 15-60 refers to the concept of a "public function."  Rather, section 15-60 refers to "public pur­poses."  

In 
Forest Preserve District of Du Page County v. Department of Revenue
, 266 Ill. App. 3d 264, 639 N.E.2d 1385 (1994), which is cited in Northwest's brief, this court addressed the "public purpos­es" exemption.  The district had contended that the opera­tion of a sanitary landfill on its property was a public purpose.  This court characterized "the pivotal question [as] whether the primary use of the subject property was for a tax-exempt pur­pose."  
Forest Preserve District
, 266 Ill. App. 3d at 270, 639 N.E.2d at 1390.  This court held that the operation of a landfill by a for-profit business, with royalties flowing to the district, showed that the primary use of the property was for a non-public purpose.  
Forest Preserve Dis­trict
, 266 Ill. App. 3d at 270-71, 639 N.E.2d at 1390.

Northwest also cites 
Childrens Development Center, Inc. v. Olson
, 52 Ill. 2d 332, 288 N.E.2d 388 (1972), where the leasing of tax-exempt property by a religious corporation to a non-profit corporation, whose use of the property was tax-exempt, did not destroy the tax-exempt status of the property.  The supreme court stated that:

"It is not questioned that the activities con­ducted by Center are charitable and that if the property were owned by Center and these activi­ties conducted thereon, it would be tax exempt.  Also if Sisters were to con­duct a similar oper­ation on the property instead of Center, it appears that the prop­erty would be tax exempt."  
Childrens Devel­opment Center
, 52 Ill. 2d at 334-35, 288 N.E.2d at 390.

The court determined that it was the primary use to which the property was devoted after the leasing which determined whether the tax-exempt status continued.  
Childrens Development Center
, 52 Ill. 2d at 335-36, 288 N.E.2d at 390-91.

Childrens Development Center
 is not controlling, as it involved the exemption for property of a charitable organization "exclusively used for charitable or beneficent purposes, and not leased or otherwise used with a view to profit."  See 35 ILCS 200/15-65(b) (West 1996).  However, as the dissent noted, the statute could have been more narrowly construed to deny the exemption.  See 
Childrens Development Center
, 52 Ill. 2d at 337-39, 288 N.E.2d at 391-92 (Davis, J., dissenting).  The majority opinion reflects the long-standing view that the construction of tax exemptions should be narrow, but not unreasonably narrow.  
People ex rel. Goodman v. University of Illinois Foundation
, 388 Ill. 363, 370, 58 N.E.2d 33, 37 (1944); 
People ex rel. Pearsall v. Catholic Bishop
, 311 Ill. 11, 16, 142 N.E. 520, 522 (1924).  Moreover, the focus on the primary use of the property after it is leased is the approach taken by this court in the 
Forest Preserve District
 opinion.

We note that the Department chose to ignore 
Forest Preserve District
 and 
Childrens Development Center
 in its brief.  We further note that the supreme court has recognized that the funds and property of charitable organizations may be devoted to public purposes.  See, 
e.g.
, 
American College of Surgeons v. Korzen
, 36 Ill. 2d 340, 348, 224 N.E.2d 7, 11 (1967), 
overruled on other grounds
, 
Christian Action Ministry v. Department of Local Govern­ment Affairs
, 74 Ill. 2d 51, 383 N.E.2d 958 (1978).

The record shows that Northwest is a non-profit corporation that maintained space, facilities and supplies for meetings of Alcoholics Anonymous and its family service groups.  Our legisla­ture has declared that alcohol abuse is a serious public health problem and that it is imperative to implement a comprehensive, coordinated strategy for attacking this problem.  20 ILCS 301/1-5 (West 1996).  This strategy is to be devised by the executive branch, but imple­mented through various entities, including private volunteer agen­cies.  See 20 ILCS 301/1-5 (1996).  Al­though the record does not show whether Northwest is working with the State, we take the statute as a recognition that private groups may be well-suited to attack this public problem.

Our judiciary also recognizes the importance of groups such as Alcoholics Anonymous and relies on them in the course of exercising judicial power.  It is not uncommon for Illinois courts to make attendance of Alcoholics Anonymous a condition of probation in criminal cases, when that condition may be useful in rehabilitating an offender.  
E.g.
, 
People v. Graham
, 229 Ill. App. 3d 733, 593 N.E.2d 1163 (1992); see also 
People v. White
, 165 Ill. App. 3d 249, 518 N.E.2d 1262 (1988) (condition of release of insanity acquitee).  Our supreme court has also required entry into continuing treatment for alcoholism as a condition of probation in attorney disciplinary matters.  See, 
e.g.
, 
In re Kunz
, 122 Ill. 2d 847, 524 N.E.2d 544 (1988).

We note that the supreme court has addressed the concept of "public purposes" in a slightly different tax context.  In 
People ex rel. Lawless v. City of Quincy
, 395 Ill. 190, 69 N.E.2d 892 (1946), the court affirmed a tax exemption for a municipal airport, pursuant to a statute exempting public grounds owned by a municipality and used exclusively for public purposes
(footnote: 5) (now embodied in 35 ILCS 200/15-75 (1996)).  The 
Lawless
 court indi­cated that property is used for public purposes when it is open on equal terms to use by the public.  See 
Lawless
, 395 Ill. at 200, 69 N.E.2d at 897.  Thus, the access of the public to proper­ty claimed to be devoted to public purposes may be significant in determining whether the exemption applies.

In this case, it is undisputed that Northwest offered ap­proxi­mately 50 meetings per week in 1991.  These meetings served approxi­mately 4,000 people monthly.  The only requirements for membership in Northwest are a desire for sobriety and regular attendance of meetings.  The record shows that Northwest would ask members for donations at the beginning of meetings, but no person was excluded for failing to make a donation.  Similarly, Northwest made litera­ture available for purchase at meetings, but would give the litera­ture to those who could not afford it.  Article IV of Northwest's by-laws provide that "[n]o dues or fees shall ever be assessed for membership ***."  This is not a case where membership dues were held for the benefit of the membership instead of in trust for the public.  See 
American College of Surgeons
, 36 Ill. 2d at 348, 224 N.E.2d at 11.

In sum, it is undisputed that Northwest is a non-profit group.  Our state government recognizes that the activities of groups such as Northwest are not merely charitable, but also attack a serious public health problem.  The record shows that Northwest opened the leased property to the general public for this public purpose.  If Northwest had owned the property, or the Village of Palatine had used it for attacking alcoholism, the property would have been tax-exempt.  Accordingly, we conclude that the fee interest in the prop­erty attributed to Northwest is exempt from property taxation, pur­suant to the first portion of section 15-60.  We also agree with the circuit court that the property at issue falls within the scope of section 15-60(b).

For all of the aforementioned reasons, the judgment of the circuit court is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

ZWICK, J., and QUINN, J., concur.

FOOTNOTES
1:  The Department seems to admit error in the assessment in this case.  Real estate taxes can only be levied, assessed and collected in the manner expressly required by statute.  
In re County Collector
, 229 Ill. App. 3d 641, 643, 593 N.E.2d 1134, 1135 (1992).  We note that the Department lacks "any power, jurisdiction or authority to review, revise, correct or change any individual assessment made by any local assessment officer."  35 ILCS 200/16-205  (West 1996).  We also note that after the Department makes a tax exemption decision, "the board of appeals shall correct the assessment accordingly, if necessary."  35 ILCS 200/16-130 (West 1996).  Northwest has not challenged the Depart­ment's authority to change the taxpayer and parcel to be assessed when deciding a tax exemption petition.  As a resolution of the issue is not necessary to the disposition of this appeal, we do not consider the question here.

2:  Section 9-195 provides in relevant part as follows:

"Except as provided in Section 15-55, when property which is exempt from taxation is leased to another whose property is not ex­empt, and the leasing of which does not make the property taxable, the leasehold estate and the appurtenances shall be listed as the property of the lessee thereof, or his or her assignee.  Taxes on that property shall be collected in the same manner as on property that is not ex­empt, and the lessee shall be liable for those taxes.  However, no tax lien shall attach to the exempt real estate."  35 ILCS 200/9-195 (West 1996).

Section 15-55 exempts State property from taxation, but allows for taxation of State property leased to others, with such taxes to be paid by the lessee.  35 ILCS 200/15-55 (West 1996).  Section 9-195 is not applicable in this case because the Depart­ment concedes that Northwest's property is exempt under the statute applicable to property used for charitable purposes by charitable corporations.  See 35 ILCS 200/15-65(b) (West 1996).  We note that where property is leased from a municipality, the premises are owned by the lessor municipality, but the leasehold estate is the property of the lessee.  
People ex rel. Korzen v. American Airlines, Inc.
, 39 Ill. 2d 11, 14, 233 N.E.2d 568, 570 (1967).

3:  The effective date of Public Act 87-1280 was January 1, 1994.

4:  We note, however, that the circuit court's opinion on this point states that "the Department assessed the real property in fee to the Village of Palatine ***."  As noted earlier in this opinion, the record shows that the Department did not assess the real proper­ty in fee to the Village of Palatine.  Instead, the record shows that the Cook County Collector assessed the parcel as a leasehold to Northwest.

5:  The 
Lawless
 court's treatment of the tax exemption stat­ute is of interest.  As in this case, there was more than one subsec­tion of the statute that arguably could have applied to the airport land.  The 
Lawless
 court stated that if the property was being used for "public purposes" under one subsection of the statute, then the question whether it was exempt for being used for "municipal purpos­es" under another subsection of the statute would be wholly immate­rial.  
Lawless
, 395 Ill. at 195-96, 69 N.E.2d at 894-95.  
Lawless
 thus provides further support for the proposition that property need only qualify for tax exemption under one subsection of a statute.