WYNDEMERE RETIREMENT COMMUNITY, Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellees.

Second District   No. 2—94—0566

Opinion filed August 17, 1995.—Rehearing denied August 17, 1995.

Cynthia Photos Abbott, John J. Durso, Daniel W. Hynes, and Stewart T. Kusper, all of Katten, Muchin & Zavis, of Chicago, for appellant.

James E. Ryan, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and William K. Blanchard, Assistant Attorney General, of counsel), for appellees.

JUSTICE THOMAS delivered the opinion of the court:

The plaintiff, Wyndemere Retirement Community (Wyndemere), sought a charitable exemption from the Illinois Retailer's Occupation Tax Act (35 ILCS 120/2—5 (West 1992)) and the Illinois Use Tax Act (35 ILCS 105/3—5 (West 1992)). The Illinois Department of Revenue (Department) denied the exemption and the circuit court of Du Page County affirmed the Department's decision. The plaintiff appeals.

The record reveals that Wyndemere is an Illinois not-for-profit corporation and is exempt from Federal income tax as a charitable organization under section 501(c)(3) of the Internal Revenue Code of 1986 (26 U.S.C. § 501(c)(3) (1988)). Wyndemere is a subsidiary of the Central Du Page Health System (CDHS), an Illinois not-for-profit corporation which is also a section 501(c)(3) charitable organization and additionally is exempt from Illinois sales, use, and real estate taxes as an organization operated exclusively for charitable purposes.

Wyndemere is in the process of developing a 216-unit, life-care community for the elderly in Wheaton, Illinois. Wyndemere provides residents with a range of programs and services to aid the elderly, which include programs regarding nutrition, personal finance, wellness education, and exercise. The units are designed for easy accessibility and are comprised of one-, two-, and three-bedroom units ranging in size from 660 square feet to 1,560 square feet. The 22-acre facility will include a library, beauty and barber shop, convenience store, woodworking shop, exercise room, medical facilities, bank, and postal facility.

Wyndemere residents do not own their units, but instead pay an entrance fee based on the size of their unit. The fee ranges from $99,000 for a one-bedroom unit to $285,000 for a three-bedroom unit. In addition to the entrance fee, residents must pay a monthly fee of $1,007 to $2,159 to cover available services such as meals, housekeeping, laundry service, transportation, cable television, utilities, and wellness programs. A percentage of the monthly fee is also allocated to cover the residents' future health care needs.

To apply for a unit at the facility, an applicant must fill out a

detailed application from which it is determined whether the applicant can afford Wyndemere or should be considered for charitable assistance. The application process further helps to determine whether an applicant qualifies from a health standpoint in that he must be able to live independently. Additionally, the resident must maintain medicare parts A and B and supplemental health insurance. Once an applicant qualifies, Wyndemere will allow an applicant to remain even if his health declines as time passes, and the resident will be allowed to remain even if he can no longer pay the monthly fee or other charges. If a resident can no longer live independently, he may transfer to a smaller, assisted-living unit. If a resident is transferred to a long-term-care facility, he will continue to pay the monthly fee to Wyndemere, and Wyndemere will pay the provider of the long-term-care facility. If the resident's declining health forces a permanent move to a long-term or skilled health-care facility, such as a nursing home, the resident's unit at Wyndemere will be "resold," and 75% of the market value will be placed in an account for the resident. The resident then continues to pay the monthly fee to Wyndemere even after moving to the nursing home. If he is no longer capable of paying the monthly fee, Wyndemere then has the right to access his account from the sale of the unit to pay the monthly fees.

Wyndemere's "Charitable Policy" provides in part:

> "Wyndemere is committed to assisting the needy elderly. Accordingly, Wyndemere shall maintain in residence any persons who become unable to pay Wyndemere's monthly fee, by using Wyndemere's own reserves, by soliciting funds from its sponsoring organization, its members or some combination of these means. Wyndemere also shall waive or reduce its entrance fee and monthly charge, based on an individual's ability to pay. Recipients of charitable assistance shall neither be required to pay for such assistance, nor be restricted in any manner."

The policy further provides that the amount of charitable assistance shall be consistent with Wyndemere's financial resources. Thus, the number of people who may receive a waiver or reduction in the entrance fee and the monthly charge is subject to Wyndemere's ability to afford additional assistance and remain financially viable.

As of January 1993, Wyndemere had provided charitable assistance to two residents out of the 125 units sold. Specifically, Wyndemere waived the entrance and monthly fees for two 81-year-old widows. These were the only two applications for charitable assistance, and Wyndemere did not turn down any requests for assistance by needy applicants.

Charles E. Behl, Jr., testified before the administrative law judge

that he was in charge of overseeing the financial affairs of CDHS and its member organizations, including Wyndemere. He stated that Wyndemere had currently made a commitment to provide in excess of $800,000 in charity care. He further stated if residents at Wyndemere used up their resources, they would not be asked to leave. Although he could not estimate the value of such free services that would be provided by Wyndemere, he noted that Wyndemere would help reduce the government's burden to care for the elderly. He explained that studies show that residents in continuing-care facilities such as Wyndemere use about 30% less skilled nursing home care than does the rest of the general population. Furthermore, studies show that 15% of the elderly in long-term-care facilities either spend down or divert their assets. Because of the residents' relationship with Wyndemere, however, the State will not have to pay out as much medicaid assistance. Behl calculated that the State would save $160,000 annually and $3.2 million over the next 20 years.

The Department issued a tentative denial of Wyndemere's request for a tax exemption identification number. Thereafter, Wyndemere protested and requested a formal administrative hearing. Following an administrative hearing, an administrative law judge issued a recommendation that Wyndemere's tax exemption request be denied. The recommendation noted that Wyndemere had a charitable policy in place and had rendered assistance in two cases, but had no plans to extend charity outside of its intent to render additional assistance if it was financially viable. The recommendation found that Wyndemere's charitable policy was *de minimis* and speculative and Wyndemere is accessible only to those who have the substantial funds necessary to lease the space and pay for the services provided. Acting Director of the Department Sam McGaw adopted the recommendation of the administrative law judge.

Wyndemere subsequently filed a complaint for administrative review of the Department's decision in the circuit court of Du Page County. In dismissing Wyndemere's complaint, the circuit court determined that the question of whether Wyndemere was entitled to an exemption from the use tax and the retailers occupation tax depended upon whether Wyndemere was a not-for-profit corporation "organized and operated exclusively for charitable purposes" within the meaning of the six factors enunciated in *Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149. After applying the *Korzen* factors, the court concluded that the Department's decision was not contrary to the manifest weight of the evidence.

On appeal, Wyndemere contends that the circuit court misapplied the criteria set forth in *Korzen*. Among other things, Wynde-

mere maintains that the court placed an overemphasis on the limited amount of free care that it provided. It also urges that "start-up organizations," such as itself, should be treated differently than fully operational organizations when it comes to determining whether they qualify as exclusively charitable organizations exempt from taxation.

It is well settled that the findings and conclusions of an administrative agency on questions of fact are *prima facie* true and correct. (*Worth v. Board of Trustees of Police Pension Fund* (1992), 230 Ill. App. 3d 349, 353; *Hoffmann v. Lyon Metal Products, Inc.* (1991), 217 Ill. App. 3d 490, 497.) A reviewing court's function is limited, therefore, to ascertaining whether the decision of the agency is against the manifest weight of the evidence. (*Hoffmann*, 217 Ill. App. 3d at 497.) However, where the question is one of law, such as the interpretation of a statute, the agency's finding is not binding on the court. *Village of Downers Grove v. Illinois State Labor Relations Board* (1991), 221 Ill. App. 3d 47, 53.

■ A statute which exempts property or an entity from taxation must be strictly construed in favor of taxation and against exemption; the exemption claimant must prove clearly and conclusively its entitlement. (*Gas Research Institute v. Department of Revenue* (1987), 154 Ill. App. 3d 430, 434.) In analyzing an exemption, all facts are to be construed and all debatable questions resolved in favor of taxation. *Gas Research Institute*, 154 Ill. App. 3d at 434.

■ Section 2—5(11) of the Retailer's Occupation Tax Act and section 3—5(4) of the Use Tax Act provide for an exemption from taxation if the corporation purchasing property is organized and operated exclusively for charitable purposes. (35 ILCS 120/2—5(11), 105/3—5(4)(West 1992).) Although it dealt with a property tax exemption, the guidelines set forth in *Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, are applicable in considering whether an entity is exempt from Illinois use tax and retailer's occupation tax. (*Friendship Manor v. Department of Revenue* (1980), 91 Ill. App. 3d 91, 94.) Those guidelines are as follows: (1) the charity is applied for the benefit of an indefinite number of persons, persuading them to an educational or religious conviction, for their general welfare—or in some way reducing the burdens of government; (2) the charitable institution has no capital, capital stock or shareholders, earns no profit or dividends, but rather derives its funds mainly from public and private charity and holds them in trust for the objects and purposes expressed in its charter; (3) the charitable institution dispenses charity to all who need it, does not provide gain or profit in a private sense to any person connected with it, and does not appear

to place obstacles of any character in the way of those who need and would avail themselves of the charitable benefits it dispenses; (4) the fact that the institution's statements and wording of legal documents evidence an intention to use its property exclusively for charitable purposes does not relieve the institution of proving that its property actually and factually is so used; and (5) the term "exclusively used" means the primary purpose for which property is used and not any secondary or incidental purpose. *Korzen*, 39 Ill. App. 3d at 156-57.

■ Given that we must construe all facts and resolve all debatable questions in favor of taxation, we are constrained to find that the circuit court correctly concluded that the Department properly ruled that Wyndemere was not entitled to an exemption from the taxes at issue here. First, we note that the charity provided by Wyndemere is not applied for an indefinite number of persons, and it is not dispensed to all who need it. While Wyndemere provided charity in two cases out of 125, it admitted that it was not obligated to dispense charity to all who needed it and in fact would not, but instead would do so in relation to its financial circumstances. Wyndemere emphasizes that it provided charity for the only two requests that were made of it. However, the *Korzen* factor that charity be dispensed "to all who need it" is not limited to the past but also requires an assessment of future policy. Wyndemere admitted that it did not have a policy to provide charity to all who needed it.

While it was undisputed that Wyndemere had no capital stock or shareholders and did not profit, and it arguably would reduce the governmental burden by caring for some who would otherwise receive medicaid, it is also clear that Wyndemere has failed to meet several of the other standards listed in *Korzen*. Wyndemere did not derive its funds mainly from public and private charity. Although its initial construction funds were provided by a bond offering guaranteed by CDHS, a charitable organization, the balance of Wyndemere's funds for operation is provided by the substantial entrance and monthly fees charged to those who can afford to avail themselves of Wyndemere's services. The variance in charges based on the size of the unit is also a factor indicative of noncharitable use. (See *Small v. Pangle* (1975), 60 Ill. 2d 510, 517.) Charging fees and rendering benefits to persons not poverty-stricken does not destroy the charitable nature of an organization, but this is only true to the extent that the organization also admits persons who need and seek the benefits offered but are unable to pay. *Small*, 60 Ill. 2d at 518.

Additionally, we find that Wyndemere failed to show that obstacles would not be placed in the way of those seeking the charitable benefits or that the primary purpose for which its prop-

erty is used is for charitable purposes. It is clear from the record that the primary purpose of Wyndemere is not to provide charity, but to provide a certain enhanced lifestyle to the elderly who can afford to pay for it. Wyndemere also argues that since it is a "start-up organization" it should be treated more leniently in assessing whether it should be exempt from taxation as an exclusively charitable organization. We disagree. Given that statutes which exempt an entity from taxation must be construed in favor of taxation and against exemption, we find that Wyndemere's argument is better addressed to the legislature.

For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County which upheld the Department's decision to deny Wyndemere's request for a tax exemption identification number.

Affirmed.

DOYLE and COLWELL, JJ., concur.