GRUNDY COUNTY AGRICULTURAL DISTRICT FAIR, INC., Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellants.

Third District   No. 3—02—0727

Opinion filed March 16, 2004.

HOLDRIDGE, P.J., concurring in part and dissenting in part.

Lisa Madigan, Attorney General, of Chicago (Brett E. Legner (argued), Assistant Attorney General, of counsel), for appellants.

Sheldon R. Sobol, State's Attorney, and John D. Peacock (argued), of Peacock & McFarland, P.C., both of Morris, for appellee.

JUSTICE LYTTON delivered the opinion of the court:

Plaintiff, Grundy County Agricultural District Fair, Inc. (county fair), applied to defendant, Illinois Department of Revenue (Department), for an agricultural property tax exemption for its fairgrounds for the year 1999. The Department denied the exemption, finding that the fairgrounds were leased with a view to profit and that the grounds were not used exclusively for exempt purposes. See 35 ILCS 200/15—85 (West 2000). The county fair appealed the decision to the circuit court; the circuit court reversed the administrative decision. We reverse and remand, finding that neither the trial court nor the Department used the proper test to determine the exempt status of the property.

The county fair owns fairgrounds consisting of about 90 acres of land.[1] Over the course of the year, the county fair leased the land on a short-term basis to organizations that hosted various agricultural and nonagricultural events at the fairgrounds. For example, the leases ranged from one-day sales events to automobile races that took place on eight different dates. The county fair used the proceeds from the leases to offset the cost of hosting the county's agricultural fair, an event that it coordinated and offered to the public free of charge.

The county fair applied for a tax exemption for the 1999 assessment year pursuant to section 15—85 of the Property Tax Code (35 ILCS 200/15—85 (West 2000)), which provides that "[a]ll property used exclusively by societies for agricultural or horticultural purposes, and not used with a view to profit, is exempt." To determine whether the property was exempt, the Department used one test: counting the number of days the property was used for exempt purposes and for nonexempt purposes. The Department denied the exemption because the grounds were used for agricultural events for 10 days and for nonagricultural events on at least 44 days.

Plaintiff appealed to the circuit court, arguing that it was a

---

[1]The county fair's parcel is actually composed of 160 acres, of which 70 acres are leased as farmland. The county fair did not pursue an exemption for that portion.

nonprofit organization and the only reason it leased the property was to fund the county agricultural fair. The circuit court reversed the Department's decision, finding that the use of the property for agricultural events was more "intensive" than for other events. The circuit court held that the "facility is constructed, maintained, and managed to support the annual County Agricultural Fair and the annual 4-H fair. All other uses are, in fact, incidental."

## I. Standard of Review

■ In reviewing a final decision under administrative review law, we review the agency's finding, not the circuit court's determination. *Metropolitan Airport Authority v. Property Tax Appeal Board*, 307 Ill. App. 3d 52, 55 (1999). An agency's determination of fact will be disturbed only if it is against the manifest weight of the evidence. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). Questions of law, however, are not entitled to deference and are reviewed *de novo. Envirite Corp. v. Illinois Environmental Protection Agency*, 158 Ill. 2d 210, 214 (1994). A case that involves the examination of the legal effect of a set of given facts is a question of mixed law and fact, and therefore should not be overturned unless clearly erroneous. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998).

## II. Tax Exemption

■ Statutes imposing tax liability are generally construed against the state and in favor of the taxpayer. *In re Consolidated Objections to Tax Levies of School District No. 205*, 193 Ill. 2d 490, 496 (2000). However, statutory exemptions to taxation are strictly construed in favor of taxation. *Central Illinois Light Co. v. Department of Revenue*, 336 Ill. App. 3d 908, 913 (2003). The party seeking the exemption bears the burden of clearly and conclusively proving it is entitled to the exemption. *Chicago Bar Ass'n v. Department of Revenue*, 163 Ill. 2d 290, 300 (1994). All debatable questions must be analyzed in favor of taxation. *Wyndemere Retirement Community v. Department of Revenue*, 274 Ill. App. 3d 455, 459 (1995).

■ To qualify for tax-exempt status under section 15—85, two criteria must be met: (A) the property must be used exclusively for agricultural or horticultural purposes and (B) the property cannot be used with a view to profit.

## A. Exclusive Use

■ Property satisfies the exclusive use requirement if it is " '*primarily* used for the exempted purpose.' " (Emphasis in original.) *National School Bus Service, Inc. v. Department of Revenue*, 302 Ill. App. 3d 820,

825 (1998), quoting *McKenzie v. Johnson*, 98 Ill. 2d 87, 98 (1983). If the nonexempt uses of the property are more than "merely incidental," the exemption must be denied. *Streeterville Corp. v. Department of Revenue*, 186 Ill. 2d 534, 536 (1999).

The Department argues that its "number of days" analysis is a reasonable way to determine the primary use of property. While that analysis may be relevant, we do not believe that simply counting days should be the sole measure of ascertaining the primary use of property. Relying exclusively on one factor may result in an inaccurate or unrealistic finding of primary use.

Recently, in *Arts Club of Chicago v. Department of Revenue*, 334 Ill. App. 3d 235 (2002), the court considered a tax exemption for property used for charitable purposes. The Arts Club submitted an application for tax exemption in 1995. The Department denied the application, finding that the Arts Club did not use the property exclusively for exempt purposes. As in the instant case, the Department used only one criterion to reach its finding. There, the test was how the greatest number of people used the property. The court reversed the Department's decision, finding other factors relevant to the primary use, including the percentage of the property allocated and used for exempt purposes and the percentage of total visitors who use the premises for exempt purposes. *Arts Club of Chicago*, 334 Ill. App. 3d at 249. Thus, the court broadened the scope of the Department's primary-use analysis to insure a more accurate determination of whether the property was exempt.

■ We believe that the Department's analysis in this case must also be broadened and that other factors should be considered. A more accurate definition of "primary use" must include an analysis of the following factors: (1) whether nonexempt uses directly and substantially support the exempt uses, (2) the amount of time the property is used for exempt purposes, (3) the percentage of the property used for exempt purposes, and (4) the percentage of total visitors who use the property for exempt purposes. See *Arts Club of Chicago*, 334 Ill. App. 3d at 249-50. All of these factors must be weighed together to determine whether the property's primary use is agricultural. See *Arts Club of Chicago*, 334 Ill. App. 3d at 250.

We first consider whether the nonexempt uses of the property directly and substantially support the exempt uses. The grounds were built, maintained and managed to host the annual Grundy County fair. Nonexempt uses of the grounds were temporary leases that generated money used to subsidize the fair itself. The money was not used for any other purpose. The various leases generated $19,500 in revenue. In addition, the fair received grants from the state to partially

reimburse the fair for its expenses. Despite the lease revenue and grants, the fair still lost $42,000. In light of the above, we find that the nonexempt uses directly and substantially support the exempt uses.

The next three factors lack sufficient support in the record to sustain a decision. First, although the Department reached a "number of days" determination, it is unclear whether it took into account the time involved in setting up and taking down the fair. Since these days are critical to the success of the fair, they must be included. The Department should also consider all agricultural or horticultural events hosted at the fairgrounds in its analysis. Next, the percentage of property used for exempt purposes should, of course, include only the 90 acres for which the county fair sought an exemption. Finally, the Department must compare the percentage of people who used the property for exempt purposes with those using the property for nonexempt purposes.[2]

Although we have found that the first factor favors the county fair, the record is insufficient to permit us to make accurate findings on the last three factors; thus, we must remand to the Department to determine the factual bases of these issues.

### B. View to Profit

Even if an applicant uses the property exclusively for agricultural purposes, the applicant must also show that the property is not used with "a view to profit." 35 ILCS 200/15—85 (West 2000). The Department argues that when the grounds were leased for nonexempt purposes, the land was used "with a view to profit." The county fair counters that it never profited from the leases because all proceeds funded the county agricultural fair.

■ In considering a tax exemption based on the property's use, it is the primary use of the property that determines its taxable status. *Northern Illinois University Foundation v. Sweet*, 237 Ill. App. 3d 28, 36-37 (1992). If the property is leased, it is the primary use of the property by the lessee, and not its incidental or secondary use, that determines whether the tax-exempt status continues. *Sweet*, 237 Ill. App. 3d at 36-37. Where the principal and primary purpose to which property is employed is for an exempt purpose, the mere fact that income is incidentally and secondarily derived from its use for a nonexempt purpose does not necessarily render the property taxable. *City of Mattoon v. Graham*, 386 Ill. 180 (1944). If the primary use is for the production of income "with a view to profit," the tax-exempt

---

[2]We are aware from our review of the record that attendance for some of the events may have to be estimated.

status is destroyed. Thus, if the primary use is tax exempt even though it may involve the incidental production of income, the property retains its tax-exempt status. *Childrens Development Center Inc. v. Olson*, 52 Ill. 2d 332 (1972).

In *Olson*, a convent owned property for which it received an annual "religious use" tax exemption. The statute exempted property used exclusively for religious or charitable purposes " 'and not leased or otherwise used with a view to profit.' " (Emphasis omitted.) *Olson*, 52 Ill. 2d at 334, quoting Ill. Rev. Stat. 1969, ch. 120, par. 500.2. The convent began leasing the property to a nonprofit corporation, which used the property to provide programs for educationally handicapped children. *Olson*, 52 Ill. 2d at 333-34. The corporation's activities were exempt under the "charitable use" provision of the tax code. The Department of Revenue began taxing the convent, claiming that the convent's lease of the land violated the tax exemptions. In finding for the convent, the court held that, with regard to income, it is the primary use to which the property is put that determines the taxable status.

*Olson* holds that the primary use of the property determines whether any income generated by the property is incidental. If the property is primarily used for exempt purposes, any resulting income is considered incidental. If the property itself is primarily used for the generation of profit, the income is considered primary and the exempt status is destroyed. *Olson*, 52 Ill. 2d at 336.

■ Here, the same property has two types of uses: agricultural and horticultural, and nonagricultural events exemplified by the short-term leases. In order to determine whether the property was leased with a view to profit in this case, the primary-use analysis discussed in section II.A. above must be applied. If the primary use was for exempt purposes, any income must be considered incidental.

## CONCLUSION

The order of the circuit court of Grundy County is reversed and remanded to the Department of Revenue.

Reversed and remanded.

McDADE, J., concurs.

PRESIDING JUSTICE HOLDRIDGE, concurring in part and dissenting in part:

I agree with the majority's holding that the Department used the wrong test to determine the exempt status of the property. I therefore

agree that the decision of the Department should be reversed. I disagree with the decision to remand for further proceedings before the Department. I believe that under the analysis articulated in *Arts Club of Chicago v. Department of Revenue*, 334 Ill. App. 3d 235 (2002), the fair proved that it was entitled to the exemption. I would therefore remand to the Department with instruction that the exemption be granted.

The record is clear that all funds raised by renting out the fair grounds were used to offset the operating expenses of the annual agricultural fair. Funds raised to meet necessary operating expenses of an agricultural or horticultural society will not defeat that society's tax-exempt status. See *In re Application of County Treasurer*, 52 Ill. App. 3d 718, 720 (1997) (*Winnebago County*). In *Winnebago County*, the statute provided an exemption for property used by agricultural societies that was not used "for pecuniary profit." Ill. Rev. Stat. 1975 ch. 120, par. 500.10. The statute has been amended replacing the phrase "for pecuniary profit" with "not used with a view toward profit." 35 ILCS 200/15—85 (West 2000). The Department suggests that the change in statutory language negates the court's holding in *Winnebago County*. I disagree. Regardless of whether the agricultural exemption is lost if the property is used "for pecuniary profit" or "with a view toward profit," funds raised to offset operating expenses of the fair should not negate the agricultural society's exemption.

For the foregoing reasons, I would reverse the ruling of the Department and remand only with instructions that the exemption be granted.